HICKS *et al.* v. CITIZENS' RAILWAY COMPANY, *Appellant.*

124 115
126 273
127 18

### Division One, July 9, 1894.

1. **Negligence**: STREET CARS: COLLISION: QUESTIONS FOR JURY. Plaintiffs, husband and wife, were driving in a buggy on defendant's street car track and a cable car followed slowly close behind, under perfect control and giving constant signals of its approach. Plaintiffs, after passing around a standing team which had prevented their driving between the track and the side walk, turned to leave the former without increasing their speed, and their buggy was struck by the car, causing the injuries to the wife complained of. *Held*, that, whether defendant's servants were negligent in running too near plaintiff's buggy or in not stopping to give them time to get off the track were questions for the jury.

2. ———: ———: ———: ———: PROXIMATE CAUSE. Though plaintiffs were negligent in going on the track, this was not the proximate cause of the accident, and whether they could have left the track more expeditiously and whether their failure to do so was contributory negligence, were questions for the jury.

3. ———: ———: ———: ———: INSTRUCTION. An instruction that, if the gripman saw, or, by the exercise of reasonable care, might have seen, plaintiff's buggy after it got on the track and was in danger of being struck, in time to have stopped the car and to have avoided the injury, the defense of contributory negligence was not available, even if the buggy was negligently driven on the track, was erroneous as requiring a street car to be stopped immediately on a carriage being seen in front of it on the track, though the car was under such control that it could have been stopped at any time.

4. ———: ———: ———: IMPUTED NEGLIGENCE. Whether the negligence of the husband could in this case be imputed to the wife, not decided.

5. **Evidence**: EXPERT WITNESS: HYPOTHETICAL QUESTION. A hypothetical question to an expert witness may assume any fact which the evidence tends to prove.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Smith P. Galt* for appellant.

(1) The court erred in overruling defendant's objections to the questions propounded to the medical experts. *Russ v. Railroad*, 112 Mo. 48. (2) The court erred in not sustaining defendant's demurrer to the evidence at the close of plaintiffs' case, and at the close of the entire testimony, and also in not sustaining the motion for a new trial, on the ground that there was no "evidence to support the verdict;" because there was no testimony tending to prove negligence on the part of defendant's employees, under the pleadings. *Railroad v. Kelley*, 102 Pa. St. 115; *Hearn v. Railroad*, 34 La. Ann. 160, 162; *Thomas v. Railroad*, 132 Pa. St. 504; s. c., 47 Leg. Intel. 223; *Boland v. Railroad*, 36 Mo. 484; *Gallaher v. Railroad*, 37 La. Ann. 288; *Railroad v. Carey*, 56 Ind. 396; *Railroad v. Isley*, 49 N. J. Law, 468. (3) The court erred in refusing defendant's instruction number 1, as the only negligence alleged in the petition is the failure to ring the bell. The plaintiffs were restricted to their specific statement of their cause of action. *Waldhier v. Railroad*, 71 Mo. 514; *Abbott v. Railroad*, 83 Mo. 272; *Ravenscraft v. Railroad*, 27 Mo. App. 622; *Fairgrieve v. Moberly*, 39 Mo. App. 32. (4) The court erred in refusing defendant's instruction number 2, because the allegation of the petition is that the "plaintiffs were driving," if so, it was their duty to look and listen for the approaching car before they drove onto the track, and if there was danger of the buggy being struck by driving onto the track, which the testimony for defendant showed there was, and that the buggy was struck the instant it drove on the track, then it was their duty not to drive on and jeopardize themselves, which is the principle of law enunciated in that instruction. *Meyer v. Railroad*, 6 Mo. App. 27; *Hick-*

*man v. Railroad*, 47 Mo. App. 65; *Smith v. Railroad*, 52 Mo. App. 36; *Boyd v. Railroad*, 105 Mo. 371; *Buzby v. Traction Co.*, 126 Pa. St. 559; *Jatho v. Railroad*, 4 Phila. 24; *Johnson v. Railroad*, 27 La. Ann. 53; *McClain v. Railroad*, 116 N. Y. 459; *Kelly v. Hendrix*, 26 Mich. 255, 261; *Scott v. Railroad*, 59 Hun, 456; 16 N. Y. Supp. 350; *Sheets v. Railroad*, 24 Atl. Rep. (N. J.) 483.

*Seneca N. Taylor* for respondents.

(1) The defendant's gripman was negligent in permitting the gripcar to collide with the buggy on the occasion in question. Persons using vehicles have the undoubted right to drive upon street railway tracks for the purpose of passing other vehicles, and active diligence is due from street railway companies to exercise reasonable care to prevent their cars from colliding with vehicles of persons exercising this right. *Henry v. Railroad*, 113 Mo. 535; *Humbird v. Railroad*, 110 Mo. 81; *Rosenkranz v. Railroad*, 108 Mo. 9; *Senn v. Railroad*, 108 Mo. 142; *Hilz v. Railroad*, 101 Mo. 55; *Winters v. Railroad*, 99 Mo. 517; *Meyer v. Railroad*, 43 Mo. 526; *Liddy v. Railroad*, 40 Mo. 519; *Frick v. Railroad*, 75 Mo. 595; *Harland v. Railroad*, 65 Mo. 24. (2) If it was imputed negligence on the part of Mrs. Hicks, which I positively deny, in being on defendant's track, in a buggy not driven by herself, still it was the duty of the gripman after seeing the buggy in danger, or by the exercise of ordinary diligence being able to have seen it, to have avoided the collision, if it could have been done by the exercise of ordinary care. *Morrisey v. Ferry Co.*, 43 Mo. 384; *Meyer v. Railroad*, 43 Mo. 423; *Brown v. Railroad*, 50 Mo. 466; *Meyers v. Railroad*, 59 Mo. 231; *Matthews v. Elevator Co.*, 59 Mo. 478; *Harland v. Railroad*, 60 Mo. 25;

*Dunkman v. Railroad*, 95 Mo. 244; *Werner v. Railroad*, 81 Mo. 368; *Bergman v. Railroad*, 88 Mo. 683; *Brown v. Railroad*, 50 Mo. 461; *White v. Railroad*, 34 Mo. App. 74. (3) *First.* Contributory negligence is an affirmative defense, and the burden of proof rests on the defendant to establish it. *O'Connor v. Railroad*, 94 Mo. 150; *Petty v. Railroad*, 88 Mo. 306; *Thompson v. Railroad*, 51 Mo. 190; Beach on Contributory Negligence, sec. 157, p. 430, and cases cited. *Second.* It was not negligence *per se*, on the part of Mrs. Hicks' husband, in driving from forty to fifty feeet on defendants track, in order to pass by a vehicle standing between the rail and curb, though half of that distance defendant's train followed behind him within two or three feet. *Swayne v. Railroad*, 28 Pac. Rep. 829; *Lynman v. Railroad*, 114 Mass. 83; *Cook v. Railroad*, 98 Mass. 361; *Heckenstein v. Railroad*, 105 N. Y. 655; *Railroad v. Easly*, 49 N. J. L. 468; *Adolph v. Railroad*, 76 N. Y. 530; *Rasher v. Railroad*, 51 N. W. Rep. 463. See, also, cases cited under point 1. *Third.* If the testimony for plaintiff is true, Mr. Hicks was certainly not negligent. And where the facts are in dispute, or where the evidence tends to rebut the defense of contributory negligence, it is the duty of the court to submit the question of contributory negligence to the jury as was done in the case at bar. He was not her agent. It has been expressly decided that a married woman can have no agent, unless she is possessed of a separate estate. *Hergman v. Stowe*, 57 Mo. 93; *Wilcox v. Todd*, 64 Mo. 390; *Hall v. Callahan*, 66 Mo. 316; *Hord v. Taubman*, 79 Mo. 101; *Henry v. Sneed*, 99 Mo. 407; *State v. Clay*, 100 Mo. 471; *Flesh v. Lindsey*, 115 Mo. 18. *Fourth.* Moreover, it has been held, that, where a wife is riding with her husband in a private vehicle, and is injured by reason of his careless driving, his negligence will not prevent a

recovery by her against a third person whose concurring negligence was the proximate cause of the injury. *Railroad v. Creek*, 14 L. R. A. (Ind. 1892) 733; *Shaw v. Kraft*, 37 Fed. Rep. 317; *Kingston v. Musgrove*, 18 N. W. Rep. 452; *Hohan v. Railroad*, 111 N. Y. 199; *Miller v. Railroad*, 128 Ind. 97; *Platts v. Cohoes*, 24 Hun, 101; *Platts v. Cohoes*, 89 N. Y. 219; *Sheffield v. Telephone Co.*, 36 Fed. Rep. 164; *Street v. Inhabitants*, 105 Mass. 82; *Joliet v. Seward*, 86 Ill. 402. *Fifth.* This question has been decided by analogy in Missouri, it would seem, in the following cases: *Winters v. Railroad*, 99 Mo. 510; *Dickerson v. Railroad*, 104 Mo. 492; *Becke v. Railroad*, 102 Mo. 544. (4) The court ruled correctly as to the admission of expert evidence in the case.

MACFARLANE, J.—This is a suit by plaintiffs, as husband and wife, to recover damages for personal injuries received by the wife, on account of the alleged negligence of defendant's employees in running and managing a train of its cable cars in the city of St. Louis.

The petition makes the following charge of negligence:

"That said injuries were occasioned by the negligence and lack of care on the part of defendant's agents and servants while operating defendant's said cars, in this, that said defendant saw, or by the exercise of reasonable care and foresight might have seen plaintiff's buggy on its right of way and consequently plaintiff's imminent danger, but, notwithstanding the facts aforesaid and regardless of its duty to operate its cars with skill and care, defendant, without having rung any alarm bell or in any wise having notified plaintiffs of its approach on said right of way, negligently and carelessly allowed the grip car to which was

attached said train of cars, to run into and break plaintiffs' buggy, thereby causing the injury above complained of.

The manner and cause of the injury is thus stated:

"Plaintiffs were driving in a top buggy in a westerly direction along Easton avenue; a train of defendant's cars, propelled as aforesaid, and in charge of its servants and agents, struck and collided with the rear of the vehicle in which plaintiffs were seated at a point on said Easton avenue, just west of Thomas street, and that the shock of the collision was such that plaintiffs' vehicle was broken and they were precipitated to the ground."

The character of the injuries are charged to have been, shock to nervous system, causing her eyesight to become impaired, and affecting her mental condition, and causing her to have frequent and serious hemorrhages, so that ever since the accident plaintiff has suffered great and continual physical pain and mental anguish.

The answer was a general denial and a plea of contributory negligence. The judgment was for plaintiff and defendant appealed.

The evidence shows that Easton avenue is a public street running in an easterly and westwardly direction through the city of St. Louis. On this street defendant operates two tracks of its cable railway. A space of only eleven feet is left on the north side of the street between the track of the railway and the curbing. Thomas street runs into Easton avenue from the northwest at an angle of about thirty-three degrees. On the twenty-second day of April, 1891, plaintiffs, in a single-top buggy, drove north up Thomas street into the north side of Easton avenue. About fifty feet from the intersection a horse, attached to a buggy, was standing on the street thus occupying and obstructing

the greater portion of the eleven feet space between the railroad track and the foot walk. Plaintiffs, in order to pass this buggy, were required to drive upon the railway track. At the time plaintiffs undertook to pass round this standing buggy a train of cars was approaching from the north, on Easton avenue, and on the north track of the road. The customary warnings of this approach were given by the employees in charge of the cars, but these, Mrs. Hicks testified, she did not hear. The cars reduced their speed to about the rate at which plaintiffs were moving and when the latter got upon the track the cars were within a few feet of the buggy and slowly following it, making signals for plaintiffs to leave the track. After plaintiffs had passed round the buggy they turned to the right in order to leave the track. After all, except the left hind wheel of the buggy, had cleared the track, that wheel was struck and broken, and the hind end of the buggy fell, carrying plaintiffs with it.

The evidence tended to prove that plaintiff at the time was in delicate health and the shock from the fall and fright, caused her to lose consciousness, produced hemorrhages of the womb and seriously affected her nervous system. The evidence will require a more detailed consideration in the opinion.

Defendant demurred to the evidence, which was overruled. The case was submitted to the jury upon instructions of the court. Verdict and judgment were for the plaintiff Mrs. Hicks, and defendant appealed.

I. It is first argued that the judgment can not stand, for the reason that there was no evidence of negligence on the part of defendant's employees. The evidence shows that the cars followed very slowly after the buggy, and within a few feet of it, giving constant signals of its approach. That the cars were under perfect control is attested by the undisputed fact that they

were stopped immediately on striking the wheel of the buggy. So far, there can be no complaint as to the conduct of the employees. The gripman in charge of the cars also saw plaintiffs driving along the track in front of the train, and knew that the cars were entitled to the right of way on the track. The signals given were not only intended to notify plaintiffs of the approach of the cars but to admonish them to get out of the way. They should have expected that in obedience to the signals the buggy would be driven from the track and should have been prepared for any necessary checking of speed, or slipping of the wheel of the buggy on the rails, in making the turn.

Counsel for defendant states the cause of the injury thus: "Hicks drove the buggy, with the front wheels onto the track, just ahead of the car, and continued to drive it that way, ahead close in front of the car, bell ringing all the time, and did not accelerate his speed, and, without any notice to the gripman that he was going to do so, attempted to turn to the one side, which always involves a moment's lessening of speed, and thereby caused the buggy to be struck by the car."

We do not think that those in charge of the car were entitled to notice that plaintiffs were about leaving the track, after they had been notified to leave it. On the contrary they should have been prepared for such a movement by plaintiffs, and for the moment's lessening of speed necessarily involved therein. There was no evidence that the momentary checking of the buggy was unusual or unexpected.

We think the question, then, as to whether the cars were run closer to the buggy than reasonable prudence and care dictated, and whether defendant's employees should, in the exercise of proper care, have checked or stopped the cars, in order to give plaintiff time to get

out of the way, were properly for the determination of the jury. The evidence certainly tended to prove that the cars were following within two or three feet of the buggy, and moving at about the same rate of speed, so a very slight check in the speed of the buggy would necessarily have resulted in a collision.

II. It is insisted in the next place that, though defendant may have been negligent, plaintiffs were also guilty of negligence which directly and proximately contributed to the injury and, therefore, the judgment · should not be sustained. It is said that plaintiffs were negligent in driving on the track in front of the train, and in thereafter driving upon, and laterally along the track without heeding the warnings of the defendant.

Generally a distinction is made between the duties required of one going upon, or crossing, a street car track, and the track of a steam railroad. The weight and momentum of trains propelled by steam, renders their control and management much more difficult, than light cars moved by cable or electricity. The measure of prudence which will constitute ordinary care is less with respect to those going upon them than is required of persons crossing tracks of steam railroads. Beach on Con. Neg. [2 Ed.], sec. 290.

Persons in wagons and other vehicles, have the undoubted right to pass over or upon street car tracks without hindrance. Yet the right of a traveller to drive a vehicle upon or along a street railroad track does not absolve him from the duty of looking for approaching cars. The cars can only move upon the tracks, and are used for the convenience of the public, and are consequently entitled to the right of way as to all others. It is, therefore, the duty of a traveler to give way to approaching cars so as to cause no unnecessary hindrance. *Adolph v. Railroad,* 76 N. Y. 532;

*Railroad v. Isley*, 49 N. J. L. 468; *Wood v. Railroad*, 52 Mich. 402.

But we are not able to say that the evidence shows conclusively that plaintiffs violated any of these rules, unless it was in driving upon the track without observing the cars, which must have been very near them. But that negligence was clearly not the proximate cause of the injury, for plaintiffs not only got safely upon the track without injury, but they were seen by the servants of defendant, and, by their timely action, a collision was then avoided. After that the conduct of plaintiff could not be declared negligent as a matter of law, whether they could have left the track more expeditiously than they did, and whether doing so would have avoided the injury, were questions for the jury. It seems to me there was very little evidence tending to show contributory negligence in the case, but we can not say there was none. Defendant's gripman saw plaintiffs in their dangerous and exposed situation, and the chief question is whether, after that, he acted with due care towards them. *Hanlon v. Railroad*, 104 Mo. 389, and cases cited.

III. Objections were made to a number of hypothetical questions asked physicians by plaintiffs' counsel with a view to getting before the jury their opinion as to whether conditions and sufferings of Mrs. Hicks were produced by the accident. These questions were long, and need not be given in full to understand the questions involved. The objections urged to those questions were that they assumed facts not warranted by the testimony. The question asked Dr. Kier assumed that the evidence tended to prove that Mrs. Hicks had "chilly sensations all over her body following immediately after this accident;" "that she still has serious floodings and severe pains

on all occasions and still has cold sensations all over her body."

In the questions asked Dr. Fry the following facts were assumed: That Mrs. Hicks was subjected to a "serious shock;" that the buggy fell "violently to the pavement or to the ground and that the lady was thereby jarred, shocked and frightened to such a degree that she lost self-consciousness;" that "immediately after the accident and for several weeks she suffered nervous prostration to such a degree that she was often unconscious;" that she "still has frequent flooding spells." The same objections were urged to questions asked Dr. Bond.

The rule in regard to the hypothetical qustions that may be asked an expert witness is thus clearly given in a recent case by this court: "Counsel in propounding a hypothetical question to an expert witness may assume any state of facts which the evidence tends to establish and may vary the questions so as to cover and present the different theories of fact. But there must be evidence in the case tending to establish all the facts stated in the question. If the question assumes any fact which the evidence does not tend to prove, it should be excluded. *Russ v. Railroad*, 112 Mo. 48.

It is manifest that a very slight change of fact may lead to a very radical difference in the conclusion drawn from them. This is particularly true when the opinion of physicians is used to prove the effect produced upon the health of a person by a certain cause or the cause of certain physical and mental conditions. If, then, the hypothetical questions to which objections are made assumed any fact which the evidence did not tend to prove, it was improper and should have been excluded. But we have gone over the evidence very carefully and are of opinion that it fairly tends to prove every fact assumed by the questions.

The evidence proves that the hind wheel was broken, which caused the buggy to fall to the ground carrying plaintiff with it. She was a large, fleshy woman and from these facts it might well be inferred that the fall of the buggy was "violent" and that plaintiff was thereby jarred, shocked and frightened. The evidence of plaintiffs was that she lost consciousness when the buggy fell and before she was removed from the place of the accident she suffered severe pains through her back, stomach, bowels and womb, accompanied with severe hemorrhages, and "creeping sensations" from head to foot, and from that day to the day of trial she had hemorrhages and these "nervous sensations, drawings and twichings." The evidence of Mrs. Myrick was that all of the symptoms described by plaintiff as the immediate result of the fall, existed next morning, and also cold, chilly sensations. All other symptoms continuing, we may fairly infer from all the evidence, that the chilly sensations followed immediately after the accident. From all the facts proved we may also infer that plaintiff received a "serious shock."

IV. The first instruction defined the duty of defendant's gripman, in case he saw, or by the exercise of reasonable care might have seen, the buggy on the track in front of the cars, to be that of reasonable care to avoid a collision. There is nothing in this requirement of which defendant can reasonably complain.

The second instruction given on behalf of plaintiff is as follows:

"The court further instructs the jury, that if they believe from the evidence that the gripman operating defendant's gripcar on the occasion of said collision saw, or by the exercise of reasonable care might have seen, said buggy after it got upon defendant's track in danger of being struck by the car, in time to have

stopped the train by the exercise of reasonable care and diligence, before it struck the buggy, and so have avoided the collision, then the defense of contributory negligence can not aval, even if the jury believe that Josephine Hicks, plaintiff, negligently drove the buggy or allowed said buggy to be driven upon defendant's track on the occasion in question."

We think the duty this instruction required of street railways too broadly stated under the circumstances of this case. The jury might well have inferred from the instruction that it became the duty of the gripman of the car, to stop the train immediately, upon seeing the buggy on the track in front it, and that, if he could have done so, and failed, he was guilty of negligence. The same rule of care is thus imposed upon those managing a train of cable cars in the streets, as is required of one running a steam locomotive. The evidence is undisputed that the cars, under perfect control, moving at a rate of speed not exceeding a slow walk, followed the buggy on the track from thirty to fifty feet, and could have been stopped at any moment. As was said in the second paragraph of this opinion, a traveler in a vehicle has the right to use the track of a street railway and travel laterally upon it, provided the running of trains was not thereby unnecessarily hindered, and that it was not negligence in itself for the train to so follow after the buggy. To require a street car to stop for a clear track when no danger of a collision is threatened would virtually stop the running of all such trains, or so interfere with them, as to greatly impair their usefulness.

Beach says: "The danger of accident from collision with street cars is very trifling as compared with that from collision with trains of cars running at a high rate of speed upon a railroad. Street cars never run very fast, and are easily and almost instantly stop-

ped.    What, therefore, might be gross negligence as respects a steam railroad, might be perfectly prudent and perfectly proper to be done in dealing with street cars.    We must not, therefore, attempt to apply to street railways the rules of law applicable to steam railroads.    The cases are essentially different, and, the reason for the rule ceasing, the rule itself must also cease." Beach Cont. Neg. [2 Ed.], sec. 290; *Lynam v. Railroad*, 114 Mass. 83.

It is true, the instruction predicated the duty of stopping upon the fact that the buggy was in danger of being struck, but it assumed that the danger arose when the buggy got upon the track.    There was no danger of a collision in moving the train slowly and cautiously, and not negligently near to the buggy.    Both were going in the same direction, and at about the same rate of speed, and danger only arose when plaintiff attempted to leave the track.

But the instruction goes further and plainly informs the jury that, if the gripman saw the buggy after it got upon the track in time to have stopped the car and avoided the injury, the defense of contributory negligence can not avail defendant.    It was as well the duty of the plaintiffs to leave the track, as it was of defendant to prevent the cars from striking the buggy.    Reasonable care and caution should have been observed by each in doing what duty required of them.

Plaintiffs were not relieved of this duty by reason of a failure of defendant to do that required of it. There was no question here as to the negligence of plaintiff in going upon the track.    When the buggy got upon the track the situation was changed altogether. It was for the jury to determine the question of negligence, and contributory negligence, in view of what was done by the parties in the situation in which they were placed.    The question of contributory negligence

should not have been withdrawn from the jury in the circumstances.

V.   Counsel discuss the question as to whether the negligence of the husband can be imputed to the wife. We do not think the question appears upon the record in this case.   The charge in the petition is that plaintiffs were driving the buggy.   The instructions assumed the same fact.   There was no attempt by the parties to separate the act of one from the other and to consider the question of imputed negligence would be a very needless work.   Whether Mrs. Hicks would be held responsible for the negligence of her husband or not, she would certainly be held responsible for her own. *Hoag v. Railroad*, 111 N. Y. 199.   Reversed and remanded.   All concur.