EVE DAVIS v. THE TRAVELERS INSURANCE COMPANY.

#### No. 10343.

1. HYPOTHETICAL QUESTION—*must be based on evidence.* Hypothetical questions to an expert witness should be based upon the evidence, and should not assume the existence of matters, material to the formation of a correct opinion, about which no testimony has been given.

2. ———— *must not assume unproved material fact.* When the issue in a case was what one, or more, of several injuries, including the inhalation of illuminating gas, caused or contributed to the death of a person, it was error to assume in a hypothetical question to a medical witness, that such person was found in "a semi-unconscious condition" as the result of breathing such gas, when upon the truth of such assumption the witness in great part founded his opinion, and when the only testimony upon the subject was that, upon entering the room where the person was asleep and arousing him, "he seemed just like a man waking up; seemed a little slow and hard to waken."

Error from Bourbon District Court. J. S. West, Judge. Opinion filed February 5, 1898. *Reversed.*

*J. D. McCleverty*, for plaintiff in error.

*Humphrey & Hudson*, for defendant in error. *C. E. Cory*, of counsel.

DOSTER, C. J. This was an action to recover upon a policy of insurance against death by accident. The plaintiff claimed that the death resulted from the injuries of a mule-kick and a fall from a buggy. The defendant claimed that it resulted from causes not covered by the policy, and particularly from the inhalation of illuminating gas, and from an injury received in a railroad accident previous to the execution of the policy. The verdict and the judgment were for the defendant. The plaintiff comes to this court on claims of error occurring at the trial.

The facts as to the several injuries received by the deceased, including the inhalation of the gas, were not seriously in dispute, the medical conclusions to be drawn from the occurrence of such injuries being the matters most strenuously controverted. A very lengthy hypothetical case was stated to the principal expert witness for the defendant. Its quotation in print would cover nearly four pages such as these upon which this decision is reported. It detailed, from the defendant's standpoint, and with great minuteness, the several injuries of the deceased, his personal and business habits, his apparent state of health, and the incidents of his comings and goings from the time of his first accident to his death, and closed with the interrogatory: "Can you tell what was the cause of his death from that history?" Objection was made to this question, "for the reason that the hypothetical case is not based upon the evidence." This was overruled.

In addition to the specific objection thus made in

the court below, it is urged before us that the question is too long, involved, and complex to be remembered and understood by the jury ; and also that it called for an opinion by the witness upon the very matter in dispute and under submission to the jury, to wit, the cause of the man's death. Had these objections been made to the court below, so as to give it an opportunity to pass upon them before review by us, they might be found to be well taken. We know that in order to the formation of a satisfactory opinion by a medical expert all pertinent facts from which a generalization can be drawn should be stated, and also that the length of a hypothetical question is very largely in the discretion of the court trying the case ( Rogers on Expert Testimony [2d. ed.] § 28 ; *People v. Brown*, 53 Mich. 531) ; but we think it may be extended to such a great length, and be burdened with such prolixity of detail, as to be confusing rather than enlightening, to the jurors at least, and thus obscure in their minds the essential facts upon which the diagnosis is based.

We are also aware that the rule as generally stated is that a medical witness may give his opinion as to the cause of death. The most, if not all, of the cases out of which this rule has been collected are those of homicide. In such cases an opinion by a medical witness as to the cause of death rarely, if ever, involves the principal question submitted to the jury, to wit, the guilt of the accused. The opinion he expresses is upon the cause of the death, and not as to who caused it. Hence in such cases the witness, though answering the same character of question that was asked in this case, passes no opinion upon the principal fact to be tried, but only gives an opinion upon a fact from which the one principally in controversy may be inferred. In this case the principal

fact to be tried was the cause of death.  An expert opinion as to that cause, if accepted as true, would conclude the whole case ;  but in cases of homicide an opinion as to the cause of death, even if accepted as true, still leaves the question as to responsibility for such cause open for determination.  Let the cause of death in such cases be admitted, and the inquiry would still remain — Is the defendant guilty ?  In this case, if the cause of death were proved or admitted nothing would remain for determination ; the defendant would be liable or not liable according as the efficient cause of death were shown to be one thing or another.  Hence, it is by no means clear that the inquiry submitted by the defendant to its medical witness, as to the cause of death, was proper to be made.  Save in such rare and exceptional cases as admit of no other method of proof, it would seem that opinions, whether by experts or others, are not admissible upon the ultimate fact to be found.  However, no objection raising such question having been made to the court below, we are unable to determine it.

2. Unproved material fact not presumed.

The objection to the question because not based upon the evidence in the case must be sustained.  Hypothetical questions must be based upon evidence.  It does no good to theorize as to a state of facts not proved.  Rogers on Expert Testimony, §27.  With one exception, all the facts assumed in the hypothetical question asked of defendant's witness had a basis in the evidence ; but, in the main, the injuries claimed by the defendant to be the cause of death were stated in an exaggerated form, and those relied upon by the plaintiff as such causes were so minimized in character and extent as to make them appear inconsequential.  It would be difficult to say that these forms of statement of inju-

1. Hypothetical question must be based on evidence.

ries were so far from the facts as to be prejudicial, because the real facts of such injuries, having been testified to by witnesses, were known to the jury, and besides counsel are privileged to a great extent to state the facts as they view them. But, in one particular, the question assumed the existence of a material fact of which there was no evidence. It was in testimony that the deceased, a few nights before his death, went to bed in a hotel ; that towards morning one of the other guests, being attracted by the smell of gas escaping from the room in which the deceased had retired, opened the door of his room and aroused him — speaking to him in a loud voice. The witness testified as follows :

'' When I spoke to him in that loud tone of voice, he raised up in bed and spoke to me, and said : ' Is that you Ed?' He seemed just like a man waking up. He seemed a little slow and hard to waken.''

This was the only testimony as to the waking up of the sleeper and to his condition on being aroused. The hypothetical case stated to the defendant's witness assumed the condition of the man to be a ''semi-unconscious condition '' from the effect of the escaping gas. Upon this assumption the expert in great part based his diagnosis of the cause of death. In making his answer he first recapitulated all the previous injuries received by the deceased, as they had been stated in the hypothetical question put to him, and then said :

''All of these shocks play their part in bringing about very serious conditions, and later on, as a last feature in the case, we find the man at a hotel inhaling gas. We know the primary effect of gas poison is dilation of the blood vessels, a congested condition of the brain ; and we already have had a weakened condition to deal with from the start ; and what I have heard of the testimony and what is embodied in

the hypothetical question I should judge that the mature cause of the man's death was apoplexy, produced by the inhalation of gas, each of these other factors playing their part in rendering the blood vessels sufficiently weak to give way under the stress of circumstances attending that inhalation of gas. That is about how I should look at a case like that if it was brought to me."

What the testimony of this witness might have been as to the cause of death had not the incident of breathing the gas been stated to him in such highly exaggerated form, we do not know. Stated to him as it was, it formed in his judgment one of the efficient causes of death; a cause which, as is evident from his testimony, materially hastened the death. It was therefore substantial error to allow the question in the form in which asked.

Other claims of error are made, and in particular one relating to the proper construction of the terms of the policy sued upon. We have examined these alleged errors, but do not agree with plaintiff in error as to any of them. However, for the one pointed out, the judgment is reversed, and a new trial ordered.