THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA V. EZEKIEL BARNES.

No. 15,005 (90 Pac. 293.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Hypothetical Questions.* Hypothetical questions put to expert witnesses should be based upon such facts only as the evidence tends to prove, and if, as to any material hypothesis, such question is without the support of evidence, it should be excluded. It may not be required that the question be based upon conceded facts nor that it embrace all the facts of which there is evidence; neither is technical accuracy required in the framing of the question, but no material exaggeration or perversion of facts assumed is permissible.

2. —— *Same.* Each party has a right to assume, so far as there is any justification in the evidence, that the facts will be found in accordance with his theory and against the theory of the opposite party, and is entitled to frame hypothetical questions in accordance with such assumption.

3. —— *Same.* The evidence and circumstances in different cases are so variant and the danger of confusing rather than assisting a jury in arriving at the truth is so great in this class of evidence that only general rules as to permissible questions should be prescribed. That justice may be subserved, a wide discretion rests in the trial judge.

4. —— *Opinion of Non-expert Witness as to Mental Condition of Another.* Non-expert witnesses shown to have had especial opportunities of observation are allowed to give opinion evidence of the mental condition of one under investigation in this respect, having first stated the facts upon

which such opinions are based, or without stating such facts when opportunity is given to cross-examine in reference thereto.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed May 11, 1907. Affirmed.

*J. C. Rosenberger, Kersey Coates Reed,* and *J. E. Sater,* for plaintiff in error.

*A. L. Berger,* and *Winfield Freeman,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This case was brought here for the review of a former judgment therein, and after a decision was rendered a rehearing was granted and a second decision was filed. A general statement of the facts will be found by referring to these opinions, reported in 72 Kan. 293, 80 Pac. 1020, and 72 Kan. 306, 82 Pac. 1099, under the same title the case now bears.

On a second trial the jury returned a general verdict in favor of Barnes for $1498.25, and made special findings of fact on questions submitted to them by the court. The defendant's motion for a new trial was denied, and judgment was rendered for the plaintiff in accordance with the verdict. The special questions and answers are as follow:

"(1) Ques. Did plaintiff swallow a pin? Ans. Yes.

"(2) Q. If your answer to the last question be 'Yes,' state on what date plaintiff swallowed the pin. A. On or about July 23, 1902.

"(3) Q. If your answer be 'Yes' to question No. 1, did plaintiff when he swallowed the pin know that he had done so? A. No.

"(4) Q. If you say plaintiff swallowed the pin, did he do so intentionally or accidentally? A. Accidentally.

"(5) Q. If your answer be 'Yes' to question No. 1, was the swallowing of the pin the sole and only cause

of plaintiff's disability or was it due partly to some preexisting sickness and partly to the pin? A. Solely to the pin.

"(6) Q. State whether plaintiff's disability was caused by such sickness, if any, alone, or by swallowing the pin alone, or was it due to both sickness and swallowing the pin in conjunction with one another? A. By swallowing the pin alone.

"(7) Q. On what date did plaintiff begin first to attend to some part or portion of the business pertaining to his occupation? A. Not yet able to attend to business."

Although not all discussed in the former opinions, many of the questions now presented were necessarily considered by the court at those hearings and were determined adversely to the defendant. The judgment being then reversed and a new trial awarded, this court, as in duty bound, indicated in the opinions the respects in which it considered the court below had erred, that errors might not be repeated, and inferentially at least approved the proceedings in all other respects. The evidence to support the claim of Barnes is almost identical with the evidence before, with some additional expert testimony. It appears to be weakened, if at all, only by the proper limitation of the purpose for which statements made in the notice and claim for indemnity could be considered by the jury.

It seems pretty late, then, to discuss the first assignment of error—that the demurrer to plaintiff's evidence should have been sustained and peremptory instruction given to find for defendant. Had this been the situation this court should have returned the case with instructions to render judgment for the defendant. It was not and is not the situation. True, the evidence is not very strong, and inferences must be largely relied on, but it legitimately affords the basis for all inferences necessary to debar the ruling asked. It is also true that the evidence might have been more satisfactory had the plaintiff testified and told what,

if anything, he knew of the facts in issue.   There is
no legal obligation, however, upon a party to a civil
action to produce any particular evidence.   He may
produce as much as he chooses, or none whatever, and
take the consequences.   The legal rule is ordinarily
sufficient to protect the adverse party, and he may
properly have the jury instructed that if evidence ma-
terial to the issues is shown to be particularly within
the possession and control of either party to the ac-
tion, and he has neither produced it nor accounted for
the failure so to do, it is to be presumed that such
evidence, if produced, would not be to the advantage
of such party.

The second contention is that the court erred in
giving instruction No. 3.   The legal question therein
involved was necessarily involved and decided on the
former appeal, except it is said the court submitted
the question to the jury whether the plaintiff "acci-
dentally and unconsciously swallowed a metal pin"
when there was no evidence upon which an answer,
either affirmative or negative, could be based.   That
he emitted the pin from his stomach is some evidence
that he swallowed it, and the somewhat speedy recov-
ery from retching and vomiting, which is shown to
have persisted prior to the emission of the pin, is some
evidence that the pin was the cause thereof.   The ig-
norance of several eminent physicians and surgeons
who repeatedly examined Barnes as to the cause of
the malady, at a time when it would seem the strong-
est possible motive would have impelled him to tell
them if he knew, indicates that he neither purposely
nor consciously swallowed the pin.

It is tacitly admitted that Barnes should not be
barred of his claim by reason of his failure to give
notice of the accident during the time he is shown
to have been mentally incapable of doing so, but it
is urged that for more than ten days, even some weeks,
after the alleged time of the accident his mind was
clear and he should then have given the notice.   It is

sufficient to say that if the evidence tends to prove anything it is that during all that time neither Barnes nor any one connected with him knew that an accident had occurred or what was the cause of his malady.

It is plausibly said that in this instruction the court submitted to the jury for its determination the legal question whether the plaintiff had "made claim for compensation therefor, in accordance with the constitution and by-laws of the defendant." The instruction, however, contained a recital of the facts which it would be necessary for the jury to find to justify this conclusion, and therefore is not prejudicial in this respect.

Several assignments of error are based upon the overruling of objections to a hypothetical question propounded to several physicians and surgeons for the purpose of eliciting their opinion as to the cause of plaintiff's physical and mental condition from about the time of the alleged accident to about six or seven months thereafter. The question in the type and on a page the size of one in our reports would be about a page and five lines in length. It was not entirely accurate in its assumptions, nor were all the facts assumed which the evidence in the case tended to prove. Yet it was a fair résumé of the facts, supported by some evidence which plaintiff's counsel evidently considered as favorable to his version of the case. There were omissions of some facts supported by some evidence which would be regarded as unfavorable to plaintiff's theory of the case. (As the evidence cannot be arrayed for comparison, it is believed this statement will give the reader a better idea of the questions involved than would a full copy of the hypothetical question.)

The objections to the question were: that it was too long; it was not a fair summing up of the evidence; it eliminated important facts supported by evidence, and included facts not so supported; also, that it was incompetent and immaterial. There is some

contrariety of opinion among the courts of this country as to the essential contents and form of hypothetical questions, but the view taken by the supreme court of Iowa in *Beaver v. Spangler and Blake*, 93 Iowa, 576, 61 N. W. 1072, seems to be in accord with the weight of authority. We quote therefrom:

"Next it is insisted that the hypothetical question propounded to the expert witnesses for contestants was unfair, inaccurate, distorted, and untrue in many particulars, and that objections to it should have been sustained. The rule heretofore announced by this court with reference to such questions, in the case of *Meeker v. Meeker*, 74 Iowa, 357, 37 N. W. 773, 7 Am. St. Rep. 489, is as follows: 'It is a general rule that hypothetical questions put to experts should be based upon facts which the evidence tends to show. . . . It is not required that the questions should be based upon conceded facts, nor is technical accuracy required in framing the questions. If they are entirely without the support of evidence, they should be excluded. Ordinarily, opposing counsel will not be slow in reexamination of the witness to correct the hypothesis upon which the question is based, if it be incorrect.' In propounding such a question, counsel may assume the facts in accordance with his theory of them. It is not essential that he state the facts as they exist, but the hypothesis should be based on a state of facts which the evidence tends to prove. Under familiar rules of practice, each side has its theory of what is the true state of facts, and assumes that it has or can prove them to the satisfaction of the jury, and, so assuming, shapes hypothetical questions to experts accordingly. The question propounded to the experts for contestants in this case is a very long one, covering more than twelve pages of the abstract, and it is impracticable to set it out in this opinion. We have gone over it very carefully, and are fully satisfied that there is nothing in it which the evidence, from contestants' standpoint, did not at least tend to prove." (Page 602. See, also, *Meeker v. Meeker*, 74 Iowa, 352, 357, 37 N. W. 773, 7 Am. St. Rep. 489; *Hicks v. Citizens' R'y Co.*, 124 Mo. 115, 27 S. W. 542, 25 L. R. A. 508; *The Louisville, New Albany & Chicago Railway Company v. Wood*, 113 Ind. 544, 14 N. E. 572.)

Some of the assumptions are somewhat exaggerated, but in no material respect; for instance, as to the length of time the retching and vomiting continued. Hypothetical questions, to be sure, must be based upon facts which the evidence tends to show, but the attorney propounding the question is entitled to any reasonable theory in the interpretation of the evidence. There is no hardship or injustice in this, as the opposing counsel may reframe the question upon any such theory as he may entertain and require the opinion of the expert thereon. No perversion of the evidence and no hypothesis not fairly supported thereby in every material respect should, however, be allowed. There is some evidence, direct or circumstantial, to support every hypothesis in this question which seems material to the opinion expressed, and even the slightest deviation, as before said, may be corrected or counteracted on cross-examination. It is believed that the case of *Davis v. Insurance Co.*, 59 Kan. 74, 52 Pac. 67, cited by defendant, is in accord with the views herein expressed, so far as that case is analogous to this.

Again, it is urged that the question should not have been allowed for the reason that the opinion called for is, in effect, a conclusion upon the merits of the case, and thus invades the province of the jury. This objection is untenable. The verdict must, of necessity, be in favor of Barnes for an amount to be determined by the jury or it must be for the defendant. The verdict depended upon a number of facts. (1) Did Barnes meet with such an accident as the indemnity contract contemplated? (2) Was he immediately, wholly and continuously prevented from pursuing his vocation? (3) If Nos. 1 and 2 are affirmatively answered, did his condition result from the accident? (4) Did he within ten days after the accident give notice thereof to the defendant; if not, was he in a condition of mind which under the instructions of the court excused him from so doing while that condition

lasted, and, if so, did he give notice within ten days after the excusing condition ceased? (5) How much, if anything, was Barnes entitled to recover? These questions probably might each be subdivided into as many more. The answer to the hypothetical question tended to afford an answer to question No. 3, above stated. It is evidence of only one fact of many that influenced the verdict; in short, is only related to the verdict as all proper evidence must be.

It is urged that the question was objectionable in that it requested an opinion as to what *was* the cause of the assumed condition instead of what *could* have been the cause. The cases of *Davis v. Insurance Co.*, 59 Kan. 74, 52 Pac. 67, and *Glasgow v. Railroad*, 191 Mo. 347, 89 S. W. 915, are cited in support of this proposition. We see no relevancy to this question in *Davis v. Insurance Co.*, and very little in *Glasgow v. Railroad*. The rule in the latter case is based upon the fact that the evidence disclosed that the injury may have resulted from other causes—in short, the court held that the very nature of the case was such that no expert could say this or that was the cause, but could only say this or that might or could have been the cause.

The propriety of every question of this character depends upon the evidence or the hypothesis upon which it is based. If an expert were asked his opinion as to the cause of a contused wound, assumed to have been inflicted by a blow, he would be justified in saying it was inflicted with some blunt instrument, and, of a cut, that it was inflicted by a sharp instrument; if asked what particular instrument inflicted either wound he probably would only be able to say that it could have been inflicted with any one of a number of such instruments. The propounder of a hypothetical question is entitled to introduce the best evidence he has available which the evidence or hypothesis permits, and an opinion as to what might or could be may not be of the same evidential value as an opinion

as to what was a certain cause. (See *The Louisville, New Albany and Chicago Railway Company v. Wood*, 113 Ind. 544, 14 N. E. 572.) We think, under the hypothesis embraced in the questions in this case, the plaintiff was entitled to ask of, and to have answered by, the doctors the question, "Assuming all these facts to be true, doctor, I will ask you what in your opinion, as a physician and surgeon, independently of all other causes, produced the condition of the patient?" Of course, each doctor could, in answer, give an unqualified opinion or could qualify the same as his judgment dictated.

The form of such questions and what may be embraced therein are so dependent upon the particular circumstances of each case that control over the same must be left largely to the discretion of the trial judge, and his rulings thereon should be reversed only for an abuse of such discretion. (1 Wig. Ev. § 682, *b, d.*)

It is somewhat difficult to justify the admission of the evidence of Doctor Stemen that about the last day of February, 1903, he told Barnes that he (Barnes) had swallowed a pin, the purpose evidently being to show that Barnes was ignorant of the fact until so told. Yet there was evidence tending to show that at the time he emitted the pin he was unconscious and continued in bad mental condition until about this date. It was for the jury to say from the evidence when, if at all, he so far recovered his mind as to understand what his condition had been, and what, if any, accident had befallen him; and from the circumstances that only about five days thereafter he gave notice of the claim sued on, coupled with the evidence of such communication, the jury may have well concluded that theretofore he was ignorant that the basis for his claim existed.

Little need be said in regard to the objection to the testimony of Mrs. Nathaniel Barnes and Miss McCullick, who were shown to have abundant means of observation, and who testified to their opinions of

Barnes's mental condition. It is said they testified to conclusions and not to facts. Opinions are necessarily conclusions. There can be no contention but that non-expert witnesses, brought in frequent contact with the person whose mental condition is under investigation, may give their opinions as to his sanity or insanity, either first stating the facts upon which the opinions are based or doing so afterward on cross-examination.

We deem it unnecessary to discuss other questions suggested. There seems to have been a fair trial, peculiar only in that the plaintiff was not placed upon the witness-stand. It was at the plaintiff's option, however, to go upon the stand or not to do so, unless called thereto by the defendant as a witness. This option the defendant could also have exercised as it chose. Both exercised the option one way, and the defendant cannot complain thereof.

Two juries have pronounced in favor of the plaintiff, and the trial court has twice approved their findings. We find no reversible error in this second trial, and the judgment is affirmed.