No. 24,008.

SAMUEL C. HAWTHORNE, *Appellee*, v. THE PROTECTIVE ASSOCIATION OF AMERICA, *Appellant*.

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*No Copy of Policy Attached to Petition—Petition Not Demurrable.* A petition is not rendered demurrable by the failure to attach to it a copy of a written instrument as evidence of indebtedness on which the plaintiff's claim is founded, where it contains sufficient allegations regarding the effect of the instrument so that a cause of action is stated. Where such an instrument is filed with the petition and referred to therein, although not physically attached, the purpose of the statute is substantially fulfilled, and an objection by demurrer is not well taken.

2. SAME—*Terms of Policy—Notice of Any Disabling Injury To Be Immediately Given—Terms Construed.* Under an accident insurance policy providing that there shall be no liability unless the insured shall immediately notify the insurer of any disabling injury, the obligation to give notice does not arise until the insured is aware that a disability which he suffers is due to an accident. And where disability is in fact caused by a fence staple (which the insured held in his mouth at the time of a fall) becoming lodged in his throat, but he believes it to be the result of disease, a notice is in time if given upon the discovery of the truth by means of an X-ray examination.

3. SAME—*Findings—Discovery of Disabling Injury.* Special findings that the plaintiff believed he had swallowed a staple and so informed doctors whom he consulted are held, in view of the general verdict, to mean that this was his original opinion upon his own view of the case, which had yielded to the assurance of the doctors that such an occurrence was impossible.

4. SAME—*Instructions.* Instructions complained of are held not to have been materially erroneous.

5. SAME—*Allowance for Injury Claimed Not Affected by Allowance for Subsequent Disabling Injury.* A claim against an accident insurance company based upon disability which was not discovered to be due to an accident for some two years, is not affected by an allowance made for a few weeks' disability within that period on account of a sprained ankle, although the contract provided for indemnity for total disability "not exceeding one hundred and four consecutive weeks."

6. SAME—*Findings—Evidence.* The special findings are held not to be without support in the evidence.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed December 9, 1922. Affirmed.

M. V. B. Parker, G. A. Roberds, both of Olathe, Robert A. Holland, jr., Thomas G. Rutledge, and Jacob M. Lashley, all of St. Louis, Mo., for the appellant.

S. D. Scott, of Olathe, and C. O. French, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.: Samuel C. Hawthorne was a member of the Travelers Protective Association of America, a fraternal and beneficiary society incorporated in Missouri, his membership entitling him to certain payments in case of disability resulting from accident. On April 13, 1913, he was nailing wire netting to his porch, standing upon an upturned candy bucket, and holding an additional fence staple in his mouth. His foot went through the bucket and the staple disappeared. His first thought was that it had gone down his throat, but physicians whom he consulted assured him this was not the case. Nearly two years later an X-ray examination disclosed that the staple was embedded in his bronchial tube. It was removed by an operation early in April, 1915. He at once made a claim against the society on the ground that he had suffered disability from the effects of the staple ever since it was lodged in his throat. The society denied liability, and on April 23, 1920, he brought this action against it. He recovered a judgment and the defendant appeals.

1. By an amendment made May 28, 1920, a copy of the plaintiff's certificate of membership was attached to the petition. The defendant asserts that its demurrer to the amended petition should have been sustained because of the failure to attach such a copy to the original pleading. The question so presented requires to be decided, notwithstanding the amendment, because there is a contention that between the bringing of the action and the making of the amendment the statute of limitations had run. It has been doubted (Sturgeon v. Insurance Co., ante, p. 206, 210 Pac. 342) whether an insurance policy is an evidence of indebtedness within the meaning of the statute requiring that "If the action, . . . be founded on account or on a note, bill, or other written instrument, as evidence of indebtedness, a copy thereof must be attached to and filed with the pleading." (Civ. Code, § 120.) Assuming that the provi-

sion applies to such a certificate of membership as that here involved, the defect resulting from a failure to comply with it could not be reached by a demurrer to the petition, which, by saying that the certificate defined an accident and fixed the amount of payments for total and partial disability, showed enough of its effect so that a cause of action was stated. "No such question can be raised . . . on demurrer" (*Andrews v. Alcorn,* 13 Kan. 351, syl. ¶ 1), or otherwise than by motion. (*Bunes v. Simpson,* 9 Kan. 658.) although there are some decisions to the contrary. (*The Peoria Marine & Fire Insurance Co. v. Walser,* 22 Ind. 73; *Acme Mfg. Co. v. Reed,* 181 Pa. St. 382; see, also, *Shawmut Mutual Fire Insurance Co. v. Stevens,* 91 Mass. 332; but on the other hand see *State v. S. A. L. Railway,* 56 Fla. 670; *Riley v. Royal Arcanum et al.,* 140 Ga. 178; *Kraver v. City of Henderson,* 155 Ky. 633; *The Hann. & St. Jo. R. R. Co. v. Knudson,* 62 Mo. 569; *Rogers Milling Co. v. Goff, Gamble & Wright Co.,* 46 Okla. 339.) Moreover, the defect in this case was purely technical. The petition referred to the certificate in this language: "A copy of which policy or certificate of membership is filed herewith marked Exhibit 'A'." While the statute literally calls for a physical attachment, the legislative purpose is substantially fulfilled by the copy being filed with the petition, and this manner of pleading by reference to an unattached document is not open to objection by demurrer.

The certificate recited that it, together with the constitution, by-laws and articles of incorporation of the society, and the application for membership, should constitute the agreement and govern the payment of benefits. The defendant urges that the demurrer should have been sustained because of the omission to attach any of these documents. If the statute in question covers all documents affecting the validity of the claim sued on, still the failure to attach them does not justify sustaining a demurrer to a petition which states facts sufficient to constitute a cause of action. Nor did such failure call for the rejection of the constitution and by-laws when offered in evidence by the plaintiff, on the ground that they had not been pleaded.

The original petition having been sufficient to arrest the running of the statute of limitations, the claim was not barred.

2. On the back of the certificate were printed the words: "In case of injury, fatal or disabling, immediately notify the Secretary of the Travelers Protective Association, at St. Louis, Mo." The

constitution and by-laws provided that "any member in good standing meeting with an accident must notify the State Secretary of the Division of which he is a member and the National Secretary, within thirty days of said accident; giving full particulars of the same and name of attending physician;" and that "in case of failure to notify, except because of unconsciousness, or physical disability, the member or his beneficiary in case of death, shall forfeit all rights to insurance benefits." The contract therefore made the defendant's liability contingent upon a claimant's giving written notice of a disabling accident within thirty days of its occurrence, except in case of his unconsciousness or physical disability. The plaintiff gave no notice until April 1, 1915. Under various specifications of error the defendant urges that the failure to give an earlier notice is an absolute bar to his claim. The plaintiff's contention in this regard is that although from the time the staple entered his body he suffered total disability which was actually due to its presence, it was not until the X-ray examination that this fact was ascertained, and that under a fair construction of all parts of the contract he was relieved from giving an earlier notice.

It is said that "the time allowed by the policy for giving notice begins to run when the particulars or result of an accident are ascertained, where these are not immediately apparent" (1 C. J. 475), and that "if the insured, or the beneficiary under the policy, does not know that the accident was the cause of the injury, the giving of the notice within the prescribed time after he learns that the accident was the cause of the injury is a sufficient compliance with the provision for such notice" (14 R. C. L. 1334). There is some difference of judicial opinion on the subject. Perhaps the strongest case favoring a literal construction of the policy is *Hatch v. United States Casualty Co.*, 197 Mass. 101, 14 L. R. A., n. s., 503, where it is held (as expressed in the L. R. A. headnote) that—

"A provision in an accident insurance policy that written notice of the injury must be given within ten days of the event causing such injury refers to the accident, and not to the time when the effect is discovered although the discovery of the injurious effect is not made until more than ten days after the accident." (Syl. ¶ 1.)

Of this decision it is said in the L. R. A. note thereto:

"Although only one other case [*United States Casualty Co. v. Hanson*, 20 Colo. App. 393, annotated in 18 L. R. A., n. s., 109] has been found in which a court has been called upon to construe language of a provision for notice,

which was as unfavorable to the insured as that considered in *Hatch v. United States Casualty Co.,* it may be doubtful, in view of the decision in that one case especially, and of the strong inclination of all courts to resolve all doubts created by the language of an insurance policy unfavorably to the company, whether very many courts, if called upon squarely to pass upon the question, would arrive at the same conclusion." (p. 503.)

Cases of interest here will be found in a note on a related question in 7 A. L. R. 186. This court is fully satisfied with the view, to which it is already committed, that where the fact that a disability is due to an accident is not known, the time for the giving of a notice does not begin to run until its discovery. We have held an accident insurance company liable ·under a contract calling for a notice ten days after an accident, where none was given for more than two months, assigning as a reason that "during all that time neither Barnes [the plaintiff] nor anyone connected with him knew that an accident had occurred or what was the cause of his malady." (*Commercial Travelers v. Barnes,* 75 Kan. 720, 724, 90 Pac. 293.)

Roscoe Pound, in his lecture on "Judicial Empiricism," notes "eight noteworthy changes in the law in the present generation, which are in the spirit of recent ethics, recent philosophy and recent political thought." The second change to which he refers he describes as limitations upon freedom of contract, imposed both by legislation and through judicial decision, saying:

"As examples of judicial limitations, it is enough to remind you that our courts have taken the law of insurance practically out of the category of contract, have taken the law of surety companies practically out of the law of suretyship and have established that the duties of public service companies are not contractual, flowing from agreement, but instead flow from the calling in which the public servant is engaged." (Pound's Spirit of the Common Law, pp. 185, 186.)

That the modern tendency is to hold insurers to a more strict accountability is undoubted. Those who disapprove the process often characterize it as making a new contract for the parties. We think it may fairly be called interpreting the contract in the light of the general purpose for which it was entered into, and of the consideration that the obvious purpose of an insurance policy is to insure. The language employed in an insurance policy may properly be limited in its application to the situation to which it is adapted and which it presumably was intended to meet. We do not undertake to say that a valid insurance contract could not be drawn providing for a forfeiture of the right to indemnity if the insured

should fail to give notice of something that he did not know had taken place. But a purpose to impose a condition so impossible of performance ought not to be attributed to the parties unless evidenced by express and unmistakable language—as for instance by saying that ignorance of the fact should not excuse a delay. In the present case the inference that because two exceptions to the rule requiring notice at the time of injury are expressed—unconsciousness and physical disability—it was not intended that want of knowledge should be implied may well give way to the presumption that only a fair and reasonable requirement was intended.

The defendant suggests that the contract sued upon was made in Missouri and is to be given effect according to the laws of that state; and that the law as there declared by the courts is contrary to the view we have announced. We do not regard the Missouri decisions referred to as in conflict with our own conclusion, but if such were the case they would not be controlling, for while Missouri statutes were pleaded the pleadings contained no allegations with respect to any decisions of the courts of that state.

3. It is argued that the conclusions just stated do not reach the present case because "the physical fact of the swallowing of the staple was known and believed by Hawthorne." The jury gave affirmative answers to questions whether the plaintiff believed on April 13, 1913, that he had swallowed or inhaled a fence staple, and whether he continued to believe this and so notified the doctors whom he consulted during the following months. Under the instructions the general verdict necessarily implied a finding that the plaintiff did not think and believe that his disability was due to swallowing the staple, for the jury were told, in effect, that in order for the plaintiff to recover it must be shown that he did not discover and did not know or believe his disability was caused by the accident until about April 1, 1915. The special findings must be interpreted so as to harmonize with the verdict if reasonably open to such construction. The findings that the plaintiff believed he had swallowed or inhaled the staple seem fairly to mean that, noting the symptoms that followed his fall from the bucket while the staple was in his mouth, his own idea was that the staple had gone down his throat, and he so informed the doctors, but when assured by them that this was impossible he yielded his personal impression to their experienced judgment, and accepted their view.

4. The jury were instructed that the plaintiff could not recover

if he knew or thought and believed that his disability was due to swallowing the staple. Complaint is made because nothing was said concerning the reasonableness of his belief. No instruction was asked making that distinction, and a requested instruction on the general subject did not refer to it. The omission did not constitute reversible error.

The instruction, already referred to, relating to the same subject is also criticised as omitting matters necessary to be presented to the jury. We think, however, they were such as the jury would consider without attention being specifically called to them.

5. On April 26, 1914, the plaintiff sprained his ankle, the result being a disability on that account from that date to May 13, 1914, for which he received indemnity from the defendant for total and later for partial disability. By the instructions of the trial court no allowance was made in this action for such period. The defendant's by-laws provide for indemnity for total disability "not exceeding one hundred and four consecutive weeks." The claim is made that the episode of the sprained ankle, and the allowance on that account, broke the consecutive character of the present demand, and resulted in the immediate accrual of a cause of action upon the preëxisting disability, which was barred by the statute of limitations before the petition in this case was filed. We do not accept this view: Under the verdict and findings the plaintiff suffered total disability from the time the staple entered his throat; the sprained ankle then created a condition which of itself amounted to a concurrent disability, for which payment was made. The rights of the defendant with respect to this matter were fully protected when the period of disability caused by the sprain was deducted from that due to the staple.

6. The jury found specially that the plaintiff's general health was not good at the time he sprained his ankle. The defendant asserts that this finding is not supported by the evidence, because in connection with his claim against the company for indemnity in that connection he made statements to the contrary. These statements were merely matters of evidence to be considered by the jury. They did not estop the plaintiff or otherwise preclude him from showing the real facts. In answer to special questions the jury said that they indemnified him from April 13, 1913, to April 13, 1915, but not from April 26, 1914, to May 13, 1914. This is said to be inconsistent with an instruction that no recovery could

be had after the date of the commencement of his indemnity on account of his sprained ankle. We do not discover that such an instruction was given. Nor do we regard the findings as inconsistent. Indemnity was allowed in this action for two years, excluding the period for which payment had already been made. A finding of total disability was warranted, notwithstanding the plaintiff was not literally prevented from engaging in any activity whatever. (*Commercial Travelers v. Barnes*, 72 Kan. 306, 82 Pac. 1099.)

The judgment is affirmed.