## NEW YORK LIFE INS. CO. v. DOERKSEN.
### No. 1049.

Circuit Court of Appeals, Tenth Circuit.
Jan. 14, 1935.

J. S. Simmons, of Hutchinson, Kan. (Alva L. Fenn, Herbert E. Ramsey, and Stuart Simmons, all of Hutchinson, Kan., and Louis H. Cooke, of New York City, on the brief), for appellant.

Roy C. Davis, of Hutchinson, Kan. (A. C. Malloy, Warren H. White, and Frank S. Hodge, all of Hutchinson, Kan., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

On the first appeal of this case, 64 F. (2d) 240, we reserved the question of the sufficiency of the evidence to support the verdict, for the reason therein stated. It now becomes necessary to decide that question.

The policy provides for the double indemnity herein sued for if "the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause. * * * This Double Indemnity will not apply if the Insured's death resulted * * * from physical or mental infirmity; or directly or indirectly from illness or disease of any kind." In her petition, plaintiff alleged that the assured, for some reason unknown, lost control of his automobile, which plunged into a ditch and so crushed and bruised his forehead and other parts of the body as to cause his death.

The facts are outlined in our first opinion. In order to recover, there must be substantial proof (1) that the car ran off the road as the result of some untoward incident and not because of a disease of the heart, and (2) that his death resulted from injury received in the accident and not from the pre-existing heart disease.

If the proof left either question in the realm of speculation, the verdict cannot stand. It is not necessary that plaintiff's

·evidence be uncontradicted, nor that the evidence most favorable to her contention carry conviction beyond a reasonable doubt; but if such evidence left the question so open ·that a conclusion of nonliability is as reasonable and plausible as the conclusion of liability, then the verdict rests on surmise and must be set aside. The Supreme Court of the United States has steadfastly adhered to this rule in a long line of cases [1] commencing with Patton v. Texas & Pac. R. Co., 179 U. S. 658, 663, 21 S. Ct. 275, 277, 45 L. Ed. 361, where the rule is stated that "it is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 354, 355, 357, 50 S. Ct. 281, 282, 74 L. Ed. 896, arose out of a violent death where there were no eyewitnesses; the jury found that the death resulted from defendant's negligence, and two lower courts approved. But the circumstances surrounding the accident left the question of the cause of death in the realm of surmise, for the death might as reasonably have resulted from other causes as from defendant's negligence. The judgment was reversed, the Supreme Court saying in part:

"The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; New Orleans & N. E. R. R. Co. v. Harris, 247 U. S. 367, 371, 38 S. Ct. 535, 62 L. Ed. 1167; St. Louis-San Francisco Ry. Co. v. Mills, 271 U. S. 344, 347, 46 S. Ct. 520, 70 L. Ed. 979; C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; New York Central Railroad Co. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562. * * * What actually took place can only be surmised. Whether he was run down on the track by the first car, or he attempted unsuccessfully to board the train on one side or the other or succeeded, and in either case finally came to his death by falling under or between the moving cars is a matter of guesswork. * * * If allowed to sustain the verdict, it would remove trial by jury from the realm of probability, based on evidence, to that of surmise and conjecture."

In addition to the authorities cited in the Toops Case, see Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564; St. Louis, etc., Ry. Co. v. McWhirter, 229 U. S. 265, 33 S. Ct. 858, 57 L. Ed. 1179; Southern Ry. Co. v. Moore, 284 U. S. 581, 52 S. Ct. 38, 76 L. Ed. 503; Order of United Comm. Travelers v. Greer (C. C. A. 10) 43 F.(2d) 499.

■■ Plaintiff's theory is that by reason of some untoward incident not disclosed, assured's car left the road and struck a signpost with such force as to throw his head against the steering post, resulting in a brain injury which caused his death. Defendant's theory is that a heart stroke caused assured to lose control of the car, and that he died of heart failure; that the head injury, if there was one, was negligible.

The uncontradicted facts are these: The assured left Dodge City about nine o'clock on the morning of January 16th, to go to Ensign, about twenty miles southwest of Dodge City, in his automobile. He was 44 years old, in apparent good health, and was alone in the car. Before reaching Ensign, he turned around and started back to Dodge City. About ten-thirty A. M., his car left a straight, dry, level, smooth road, ran along a shallow ditch for twenty or thirty feet, struck and splintered a signpost and stopped. The assured was in the driver's seat, perspiring freely although the window next him was partly open, breathing heavily, slumped over with his head resting on the side of the car. His hat was in the back seat, his vest and collar pulled open. No marks of an injury were observed. He died about two hours later, and neither the doctor who was called nor the nurse who wiped his forehead with a towel every fifteen or twenty minutes until he died, observed any wound on his head. Plaintiff's son saw no cut on the head

---

[1] Plaintiff undertakes to distinguish these authorities on the ground that they deal with tort liability. We cannot see the distinction. Facts giving rise to liability under contracts must be proven, and not guessed at.

but "it seems to me I noticed an abrasion going up across his head over his eye." The undertaker noticed an indenture and abrasion on the forehead.

One Milloway was a witness to the accident. He testified that he was in a car overtaking that of assured when he saw it wabbling in the road; that when it went into the ditch it was going seven to nine miles an hour. Plaintiff and her son testify that before the trial this witness told them assured's car was going twenty miles an hour, but do not fix this at the time the car went into the ditch. Assuming that this discredits Milloway's estimate of speed, one of plaintiff's witnesses who arrived just after the accident and who made a careful examination of the surroundings, testified that "the car was evidently going at a rather low rate of speed," as the physical facts bear out. There is no dispute that the car swerved before going into the ditch, and no evidence of a blow-out, faulty mechanism, or other reason for the accident. Drowsiness of the driver at this hour of a January morning, with a window partly open, is not probable.

There was an autopsy which conclusively demonstrated, as stated in our first opinion, that the assured had a badly diseased heart, although doubtless he did not know it.

We may assume, for present purposes, that the facts are consistent with plaintiff's theory, although we confess to grave doubts that the impact of this slowly moving car against the signpost could throw the head of a healthy driver forward against the steering post with such force as to kill him, particularly since a well man would have braced himself against such impact from the moment the car left the road. Since a car in good mechanical condition does not ordinarily leave a level highway in broad daylight, if driven by one in full possession of his faculties, a jury might well conclude from these facts that the accident was caused by some untoward incident, such as a wasp or a bee, the lighting of a cigar or the sudden appearance of a calf or chicken in the road, distracting the attention of the driver.

But it is not enough that under the facts liability might exist; if a different conclusion may as reasonably be drawn from the facts, then the jury may not guess as between equally probable causes. To say that a conclusion other than an accidental cause not contributed to by disease, is as reasonable a conclusion from the facts as the contrary, is to understate the case. For when the assured left Dodge City he was afflicted with a serious heart disease, one which plaintiff's doctors testified might cause him to faint if the heart was subjected to extreme exertion. A doctor called by the defendant testified to that which is a matter of common knowledge, that "anger, strain, fear, excitement would increase the duty upon the heart and the heart in that condition might fail." If it did fail, there would be a struggle for breath—and the assured's vest and collar were pulled open and his hat in the back seat, and he was perspiring heavily, on a day in midwinter. If his heart failed, the car would wabble in the road, and it did. Every condition found by the attending physician tallies exactly with heart failure. Some of the lay witnesses disagree as to the color of his skin—whether it was blue or ashen. But the blue or cyanotic color of the lips and finger nails noticed by the attending physician comes from a lack of oxygen in the blood following labored lung action, and it is not disputed that artificial respiration and stimulants were necessary to keep the lungs functioning. There was therefore a lung stoppage; whether the symptomatic cyanotic color was observed by lay witnesses on the face sheds no light on the cause of death. If there were abrasions on the forehead as the son thought he noticed, they were so trivial they escaped the eyes of the nurse who bathed his forehead until he died, and are easily accounted for by his head dropping forward on the steering post as unconsciousness closed upon him. Premonitory pains might well account for the assured's otherwise unexplained effort to return home without going on to Ensign. Whether the heart failure came about because the occlusion that morning reached the point where the heart was no longer able to carry its normal load, or whether some incident of the journey—excitement or anxiety or the change of a tire—subjected it to an abnormal load, we do not know. But we do know, from the stubborn findings of the autopsy and the photographs of the heart, that assured's heart was in such condition as to afford the most rational and reasonable cause of the car leaving the road. That cause being, to say the least, as probable as any other, a verdict resting upon another cause no more probable rests on surmise and speculation and cannot support a judgment.

Since plaintiff failed to adduce substantial proof that the injury to the head result-

ed from an accidental cause, we need not inquire closely as to whether there was substantial proof that death resulted from the blow on the head. It may be said that the great weight of the evidence, to say no more, is opposed. The most minute macroscopical examination disclosed no injury to the periosteum, the skull or the brain. Plaintiff produced two doctors who testified that death can result from a blow on the head so light that no injury to the brain is observable to the naked eye. One of them had performed no autopsy in ten years; the other was one who for years has specialized in diseases of the eye, ear, nose and throat and who admitted that his experience in anatomy was no more than that of a student in medical school. No recent medical authority is cited in support of this opinion. The defendant produced an outstanding pathologist, who had performed 2,200 autopsies, and many eminent practitioners in the field under examination, who testified to the contrary and whose opinions are supported by medical literature based on the study of hundreds of cases of brain injury. The record convinces us, beyond the shadow of a doubt, that the assured died of heart failure; whether a jury's verdict to the contrary, based on such opinion evidence as plaintiff produced, can support a judgment, presents a perplexing problem which there is no present necessity of attempting to answer.

Appellee contends that the refusal to direct a verdict is not reviewable because the motion interposed at the close of all the evidence did not state the grounds therefor. It is not suggested that appellee or the trial court was in any way misled or taken unawares by the omission, and in view of the former trial and former appeal where the same questions were argued at length, there could be no basis for such suggestion if made. Both counsel and the trial court, by the motion made, were as fully advised of the point of law raised by the motion as if it had been more specific. Appellee's position is that unless counsel adds to his motion the words "under the law and evidence," or words of similar import, a judgment based on no evidence must be affirmed.

Whether a motion for an instructed verdict may be general or must be specific has been the source of some contrariety of judicial opinion. In the Eighth Circuit, the rule has had a checkered career. In 1911 that court noticed and reviewed the conflict in the authorities, but adhered to its then established practice of reviewing the sufficiency of the evidence on a general motion. Choctaw, O. & G. R. Co. v. Jackson (C. C. A. 8) 192 F. 792. This rule was twice formally adhered to. McDowell v. United States (C. C. A. 8) 257 F. 298; Lynch v. Darnall (C. C. A. 8) 265 F. 913. It was followed, sub silentio, as late as Illinois Power & Light Corp. v. Hurley (C. C. A. 8) 30 F. (2d) 905, certiorari denied 280 U. S. 587, 50 S. Ct. 36, 74 L. Ed. 636, where a judgment was reversed for insufficiency of the evidence on a motion "to direct a verdict herein for the defendant," and a petition for rehearing based on the ground that the motion was not specific was denied. The earlier cases were overruled in Mansfield Hardwood Lumber Co. v. Horton (C. C. A. 8) 32 F.(2d) 851, and the rule there announced has been reaffirmed in Public Utilities Corp. v. McNaughton (C. C. A. 8) 39 F.(2d) 7, Falvey v. Coats (C. C. A. 8) 47 F.(2d) 856, 89 A. L. R. 1, Wharton v. Ætna Life Ins. Co. (C. C. A. 8) 48 F.(2d) 37, Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 52 F.(2d) 547; in Williams Bros. v. Heinemann (C. C. A. 8) 51 F.(2d) 1049, and Massachusetts Bonding & Ins. Co. v. R. E. Parsons Electric Co. (C. C. A. 8) 61 F.(2d) 264, 92 A. L. R. 218, the rule was followed, but the court nevertheless did review the evidence and found it sufficient. In United States v. Schweppe (C. C. A. 8) 38 F.(2d) 595, and Bank of Union v. Fidelity & Casualty Co. (C. C. A. 8) 62 F.(2d) 1040, 1041, allegiance to the rule was repledged, but the court held that the motion was specific enough if it contained the words "under the law and the evidence." In Miller v. Union Pac. R. Co. (C. C. A. 8) 63 F.(2d) 574, a general motion was sustained by the trial court, and the Court of Appeals held that appellant could not object to the deficiency in the form of the motion unless he objected to its form at the trial.

Of the other circuits, the Seventh early held that a general motion was not sufficient, Adams v. Shirk (C. C. A.) 104 F. 54; the Sixth that it was, Louisville & N. R. Co. v. Womack (C. C. A.) 173 F. 752; Standard Oil Co. v. Noakes (C. C. A.) 59 F.(2d) 897. The First, Second and Fourth will review the evidence under a general motion, unless it appears that the trial court was misled by the generality of the motion. O'Halloran v. McQuirk (C. C. A. 1) 167 F. 493; Sacks v. Stecker (C. C. A. 2) 60 F.(2d) 73; Long v. Atlantic Coast Line R. Co. (C. C. A. 4) 238 F. 919. The Ninth Circuit apparently fol-

lows the same rule. Balaklala Consol. Copper Co. v. Reardon (C. C. A. 9) 220 F. 584. The most recent and significant authority is that of the Fifth Circuit, where the court analyzed the conflict in the circuits and adopted the rule that a general motion was sufficient. Jefferson Standard Life Ins. Co. v. Stevenson (C. C. A. 5) 70 F.(2d) 72, certiorari denied, 55 S. Ct. 100, 79 L. Ed. ——. Our own circuit, in a jury waived case, has held a motion sufficiently specific if it gives as a reason that plaintiff has "failed to prove the allegations of his petition." United States v. Derrick (C. C. A. 10) 70 F.(2d) 162, 163. We have repeatedly reviewed the evidence, without comment, where the motion was general.

■ We are of the opinion that a general motion is not made specific by the addition of such general language as "under the law and the evidence" or "has failed to prove a case." A motion for a directed verdict is always directed at the insufficiency of the evidence under the pleadings and the law, and the addition of words to that import does not make the motion a particle more specific.

■ The rule requiring a motion for a directed verdict in order to test the sufficiency of the evidence springs from the fact that at common law, and under the Seventh Amendment, questions of law only are reviewable on appeal in actions at law. A motion for a directed verdict is necessary to raise the legal question of the sufficiency of the evidence to support a judgment. That such a motion must be specific has an entirely different origin; it is based upon the settled rule of appellate practice designed to expedite litigation by requiring counsel to apprise the trial court and his adversary of his contention, so that the trial court may have the opportunity of ruling on it understandingly, and his adversary the opportunity of meeting the situation if the ruling is adverse. Consequently it has repeatedly been held that defects which lurk in the record, and which could have been remedied if the point had been seasonably raised below, will not avail on appeal. McCandless v. Furlaud, 293 U. S. 67, 55 S. Ct. 42, 79 L. Ed. ——.

■ Whether a motion for a directed verdict is sufficiently definite in a particular case can be determined by reference to the rule requiring that the trial court be apprised of the contention made. If the contention is that plaintiff's proof is deficient in some formal matter which might have been remedied, such as failure to prove an appointment as administrator, or the delivery of an instrument, or the relationship of a widow to the deceased, then it must be specifically pointed out. But if, as here, the contention is the broad one that the proof as a whole fails to disclose liability, a general motion is ordinarily sufficient to challenge the attention of court and counsel to the legal point. A lurking defect in proof cannot be concealed from the trial court under cover of a general motion; but a general motion for a directed verdict serves to bring to the trial court's attention the broad proposition that plaintiff has failed to prove his case. An effort to make the motion in the case at bar more specific would have served no purpose, even if it could have been done without incorporating therein the argument on the motion.

The Kansas practice permits a general demurrer to the evidence (60—2909, R. S. Kan. 1923), and the Supreme Court has recently held that where a rule of general law is uncertain, the state law should be followed. Mutual Life Ins. Co. v. Johnson, 55 S. Ct. 154, 79 L. Ed. ——.

■ One other error assigned requires attention. The plaintiff testified that assured had been in good health since 1925. When Doctor Melencamp was on the stand for the defendant, he was asked on cross-examination "You say Mrs. Doerksen told you that he had some illness before this happened?" To which the witness answered, "She did." On redirect examination he was asked for the conversation. For some inscrutable reason plaintiff's counsel objected to the question, and the objection was sustained. The evidence was admissible because it rebutted plaintiff's testimony on a material point, and because it is proper, on redirect examination, to bring out the balance of a conversation brought out in part on cross-examination, as far as it is material. Stanley v. Beckham (C. C. A. 8) 153 F. 152. Plaintiff argues that reversal should not follow error in the rejection of material evidence in the absence of a formal offer of proof.

■ Where an objection to evidence is sustained in an action at law the general rule is the record must disclose the substance of the proffered evidence before there can be a reversal because of its rejection. An

offer to prove is the accepted method of bringing the substance of the evidence into the bill of exceptions. The reason for the rule is that judgments are not reversed unless error is made to appear, and without something in the record to disclose the substance of the rejected evidence, error does not appear. There are many authorities on the point. Schnerb v. Caterpillar Tractor Co. (C. C. A. 2) 43 F.(2d) 920; Central Supply Co. v. Carter Clo. Co. (C. C. A. 3) 35 F. (2d) 172; Chevrolet Motor Co. v. Gladding (C. C. A. 4) 42 F.(2d) 440; Maryland Casualty v. Simmons (C. C. A. 5) 2 F.(2d) 29; Cleveland & Western C. Co. v. Main Island Creek C. Co. (C. C. A. 6) 297 F. 60; Federal Surety Co. v. Standard Oil Co. (C. C. A. 8) 32 F.(2d) 119; Federal Intermediate Credit Bank v. L'Herisson (C. C. A. 8) 33 F.(2d) 841; Hatch v. United States (C. C. A. 8) 34 F.(2d) 436; Williams v. Commissioner (C. C. A. 8) 44 F.(2d) 467; Rose v. United States (C. C. A. 8) 45 F.(2d) 459; Cropper v. Titanium Pigment Co. (C. C. A. 8) 47 F.(2d) 1038, 78 A. L. R. 737; Romeo v. United States (C. C. A. 9) 24 F.(2d) 527; Sacramento Suburban Fruit Lands Co. v. Miller (C. C. A. 9) 36 F.(2d) 922; Najera v. Bombardieri (C. C. A. 10) 46 F.(2d) 281.

There is what is said to be an exception to the rule as firmly embedded in the law as the rule itself. In Buckstaff v. Russell, 151 U. S. 626, 637, 14 S. Ct. 448, 452, 38 L. Ed. 292, the court, speaking through Mr. Justice Harlan, said:

"If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party in whose behalf the question is put to state the facts proposed to be proved by the answer. But, if that be not done, the rejection of the answer will be deemed error or not, according as the question, upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded."

In Clauson v. United States (C. C. A. 8) 60 F.(2d) 694, 695, Judge Booth, after stating the general rule, said:

"A different rule or an exception to the rule has been held to apply where the proposed question is in proper form and clearly admits of an answer relevant to the issues, and favorable to the party propounding it."

No formal offer of proof is therefore necessary where the record shows that an answer to the question will disclose material facts favorable to the party propounding it. The state of assured's health prior to the accident was a material issue, relied upon heavily by the plaintiff in the court below and here. The answer to the question very clearly would have adduced testimony of a prior sickness. It was substantial error to sustain the objection.

The error assigned to the form of hypothetical questions propounded physicians is without merit. A hypothetical question should incorporate facts supported by evidence, but need not include all the facts in evidence nor facts or theories advanced by the adversary. If the adversary desires the opinion of the expert upon the facts as he asserts them to be, he can obtain it on cross-examination. To the end that expert opinion evidence may aid the jury and not mislead or confuse them, the form and length of a hypothetical question must be left largely to the discretion of the trial court. A hypothetical question which distorts instead of reflecting the evidence should not be permitted. Virginia Beach Bus Line v. Campbell (C. C. A. 4) 73 F.(2d) 97; Laughlin v. Christensen (C. C. A. 8) 1 F.(2d) 215; Napier v. Greenzweig (C. C. A. 2) 256 F. 196; City of Port Washington v. Thacher (C. C. A. 7) 245 F. 94; Woodward v. Chicago, M. & St. P. Ry. Co. (C. C. A. 8) 122 F. 66; Denver & R. G. R. Co. v. Roller (C. C. A. 9) 100 F. 738, 49 L. R. A. 77; Forsyth v. Doolittle, 120 U. S. 73, 7 S. Ct. 408, 30 L. Ed. 586; Order of United Commercial Travelers v. Barnes, 75 Kan. 720, 725, 90 P. 293; Wigmore on Evidence, § 682. The questions here propounded were fairly put and fairly answered.

An error not assigned cannot pass without mention. When Dr. Hellwig, a pathologist of note, was being qualified as an expert, he testified that he had performed more than two thousand autopsies; in answer to a question, he described in detail necessarily gruesome this autopsy. Whereupon counsel for plaintiff so far forgot himself as to refer to him as a butcher. The court properly and promptly struck out the remark, but that does not always remove the sting. The autopsy was performed with plaintiff's consent; in order to make a microscopic examination of the heart, that organ was taken to the laboratory in Wichita.

Plaintiff's counsel, before the jury, stated to the witness, "You sneaked it out," and asked him whether the organ was "a part of your collection of hearts." A microscopic examination of the heart was necessary to develop material facts in the case; counsel's charge of sneaking out the heart for a stealthy examination added nothing to the inquiry and could serve no purpose save to inflame the jury. If the contention was that plaintiff should have been represented when the laboratory test was made, that point should have been raised in the absence of the jury.

The occasion is appropriate again to call the attention of the bar of the federal courts to the recent case of New York Central R. Co. v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 303, 73 L. Ed. 706, where a judgment was reversed solely because of inflammatory remarks of counsel designed to beguile a jury from its task. In that case, Mr. Justice Stone said in part:

"That the quoted remarks of respondents' counsel so plainly tended to excite prejudice as to be ground for reversal, is, we think, not open to argument. The judgments must be reversed, with instructions to grant a new trial.

"Respondents urge that the objections were not sufficiently specific to justify a reversal. But a trial in court is never, as respondents in their brief argue this one was, 'purely a private controversy * * * of no importance to the public.' The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice. See Union Pac. Ry. Co. v. Field (C. C. A.) 137 F. 14, 15; Brown v. Swineford, 44 Wis. 282, 293, 28 Am. Rep. 582. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error. Brasfield v. United States, 272 U. S. 448, 450, 47 S. Ct. 135, 71 L. Ed. 345."

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.