## UNITED STATES v. SESSIN.

### No. 1392.

Circuit Court of Appeals, Tenth Circuit.
July 3, 1936.

Fendall Marbury, Sp. Asst. to Atty. Gen., of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., of Topeka, Kan., L. A. Lawlor, Acting Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., on the brief), for the United States.

Lawrence E. Goldman, of Kansas City, Mo. (Frank R. Daley and Goldman & Daley, all of Kansas City, Mo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

A jury, properly instructed, returned a verdict for plaintiff on his war risk insurance policy; judgment was entered thereon and the government appeals.

1. The trial court denied a motion for an instructed verdict and the error assigned to that ruling is the main reason urged for reversal.

The assignment is without merit. It should be enough to point out that plaintiff has followed explicitly the treatments prescribed by government doctors since he was grievously wounded in battle; notwithstanding all that the medical skill provided by a grateful government could do for him in the seventeen years elapsing since he was wounded, the doctors still require that he be in bed twelve hours at night, at least three hours in the morning, and two or three hours in the afternoon. It needs no more than this statement to demonstrate that a man of his education and in his environment cannot pursue a substantially gainful occupation in the six hours left him out of the twenty-four for labor and refreshment. There are no such jobs available in this section of the country, outside of government service. No hope of recovery is held out by the doctors, and the

fact that after seventeen years of treatment his condition is still totally disabling is the best of proof that it is likewise permanent.

Briefly to summarize the proof: Serving in a combatant outfit, plaintiff entered the battle raging around Chateau-Thierry on July 12, 1918; for twenty-four days he went without relief—and that means without having his clothes off, and sleeping in snatches in whatever hole was closest when the short night set in, to be routed out by the barrage which opened up with the first hint of day. Then he was gassed—apparently with chlorine or phosgene for it caused a burning in his lungs and a greenish vomit. But back to duty he went after treatment at a first aid station, and a week later a shell splintered his right thigh. His ambulance was shelled, and he was carried to a cave reeking with mud and vermin and filth. In a field hospital for two weeks, he was then evacuated to a base hospital, thence to the United States.

For eighteen months he was confined to hospitals with weights hanging on his foot.

He was operated upon twenty-three times—scraping the bone, removing necrosed bone and dead flesh, draining pus pockets and the like.

He was confined in government hospitals at Orleans and San Lausanne, France, and at Newport News, Des Moines, Fort Sheridan, San Francisco, Kansas City, Denver, and Excelsior Springs.

He was in government hospitals constantly from August 12, 1918, until February 2, 1921—nearly two and a half years. After discharge he spent from one to three months on four separate occasions in government hospitals.

He was discharged on a surgeon's certificate of disability on account of "osteomyelitis, chronic suppurative, entire shaft right femur, associated with ankylosis, partial, fibrous, right knee joint."

In addition to army surgeons and doctors, he has been under the care of ten civilian doctors including such eminent surgeons as Dr. Mayo and Dr. Francisco. He has undergone twenty-seven separate physical examinations by as many government doctors between his discharge and 1935.

In the interregna between hospitalizations, nurses from the Veterans' Bureau checked up on him at intervals.

The government assigned him to a four year course in vocational training. In school for four days, the wound broke down and his temperature came up, and the effort to train him was abandoned. In 1926 he got a job as assistant janitor in a Y. M. C. A., but the Veterans' Bureau directed him to quit.

He is now an active moderately advanced tubercular. He has carried some temperature ever since the War, and during all that time has had frequent night sweats, spitting of blood, soreness in the lungs, and hoarseness in the throat.

There are other sanguinary details which need not be recounted. The record gives a clear picture of a complication of diseases which totally and permanently disabled this veteran. He might have successfully overcome the lung disability caused by the irritating gas if it had not been for the shock of the leg wound. He might have recovered from the leg wound if his system had not been racked with tuberculosis. But the two of them together proved too much. He has had the best medical attention the country affords for seventeen years; yet he is still able to be about but a few hours a day.

The government counters by arguing that this well-nigh impregnable proof of permanent and total disability is conclusively refuted by his work record, which shortly consisted of two political sinecures doubtless bestowed in grateful recognition of the sacrifice he had made in the hour of his country's need.

For five years the city clerk of Ellis read the water and electric meters of the town along with his other work. The job took him a part of four days a month. Plaintiff was given the job of reading meters—less than four days work a month for an able-bodied man—and was paid a pittance for the work. He was able to do it about half the time without help.

Since June, 1933, he has been a third-class postmaster at a substantial salary. He supplanted a man seventy-five years old. He supervises the work for a couple of hours in the morning, and as much in the evening. He has at times hired others to help him at his own expense. It is a matter of common knowledge that there is no substantial continuity about such positions. Furthermore, if the proof discloses, as it does here, that the insured is not able to follow a substantially gainful occupation

for himself or a private employer, such proof is not conclusively refuted by showing that he is holding a political position not requiring much time or work, and often and properly tendered to those who have become disabled from pursuing any ordinary vocation by reason of war service.

■■■ 2. While plaintiff was narrating his tours of the Army hospitals, he was asked to what ward he was transferred in one of the hospitals. He answered, "Tuberculosis." Government counsel emitted the single word "object" and assigns error to the ruling. Such a general objection presents no reviewable question. Carpenter v. Connecticut General Life Ins. Co. (C. C.A.10) 68 F.(2d) 69; Cook Paint & Varnish Co. v. Hickling (C.C.A.8) 76 F. (2d) 718. Nor is there substance to the objection. The government designated a part of its hospital as the "Tuberculosis Ward"; plaintiff was sent to the ward so designated. He testified to a fact, not a conclusion, and his testimony was direct and not hearsay. A man need not be dead to enter a mortuary. If plaintiff's trip to this ward was not as a tubercular patient, cross-examination would have neutralized any inference drawn from the question. The government did not examine on the point, doubtless because the fact is that government doctors sent him there as a tubercular patient.

■■■ 3. A hypothetical question was propounded to a physician, upon the basis of which the witness was asked for his opinion as to the bodily ailments which afflicted plaintiff on January 1, 1919, as to the prognosis thereof, and as to whether one so afflicted was physically incapacitated to work. The question took half an hour to propound; it was necessarily long because plaintiff's medical history was long. It was objected that a few of the multitudinous statements of the hypothesis lacked meticulous accuracy. Two supposedly defective statements are pressed as grounds for reversal. One is that the question assumed that the wound had been cleaned out once a year. The proof was that there were twenty-three such operations over a period of seventeen years, and that plaintiff did not remember the date of the last operation although it was a good many years after he left the hospital. The other defect is that the hypothesis referred to an abscess in the abdomen as tubercular. That there was an abdominal abscess is not disputed; the proof showed a tuberculosis of the lung and leg bone at the time. No other cause for the abdominal abscess being shown, it is not an unfair inference that it was tubercular, occurring as it did between two foci of tubercular infection.

The assignment is not well taken for three reasons: (1) The form of hypothetical question must be largely left to the trial court; cross-examination, and not objection, is the weapon with which to elicit the opinion of the witness upon the facts as the adversary contends them to be. The question here, even though microscopically defective, did not distort the picture. New York Life Ins. Co. v. Doerksen (C.C.A.10) 75 F.(2d) 96, 102. (2) In the strong light of the foreground of the picture—active pulmonary tuberculosis, a splintered thigh that rotted away until after twenty-three operations amputation would have been resorted to if plaintiff could have withstood the shock—defects, if they be such, in the minute detail of the background are too indistinct for serious attention. (3) The answer of the witness—that he had tuberculosis complicated with an infected leg, that his prognosis and chances of work were poor—rests upon abundant evidence entirely aside from the detail to which objection was made. It is not conceivable that the answer would have been different if the question had been letter-perfect in all detail.

Looking at the case as a whole: Upon the underlying question of permanent and total disability, there was a fair and exhaustive trial before a jury. The jury reached the conclusion we reach from reading the record, for it is inconceivable that one who suffered such an injury, underwent so many serious operations, bore a weight on his foot for so long a time, received three blood transfusions, became so weak that it was necessary to abandon plans to amputate his leg, had pus pockets opened and sinuses drained so frequently, and was the victim of active tuberculosis, could follow continuously a substantially gainful occupation. His employment as meter reader was light with nominal work, yet he could not do it; and his present position as postmaster is a windfall which came his way through the fortunes of politics. A man who must spend eighteen hours a day in bed cannot work enough to follow with reasonable continuity a substantially gainful occupation.

The verdict was abundantly sustained by the proof; the errors assigned are barren of substance; the judgment is right on the merits, and is affirmed.